In re Norman I. GAYNES and Elaine N. Gaynes, Debtors.

Norman I. GAYNES and Elaine N. Gaynes, husband and wife, Plaintiffs-Appellants,

v.

Warren FREEMAN, et ux., et al., Defendants-Appellees.

Warren FREEMAN, et ux., et al., Counterclaimants-Appellees,

v.

Norman I. GAYNES and Elaine N. Gaynes, husband and wife, Counterdefendants-Appellants.

BAP No. AZ–82–1306–KGH.
Bankruptcy No. B 81–1074.
Adv. No. 81–204.

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued Nov. 17, 1982.

Decided Jan. 28, 1983.

Douglas C. Fitzpatrick, Sedona, Ariz., for appellants.

Jack D. Klausner, Daryl Manhart, Burch & Cracchiolo, P.A., Larry McCormley, Ahern & McCormley, Phoenix, Ariz., for appellees.

Before KATZ, GEORGE, and HUGHES, Bankruptcy Judges.

OPINION

HERBERT KATZ, Bankruptcy Judge.

This is an appeal from an order granting summary judgment on a claim for breach of contract and from a directed verdict dismissing two additional claims alleging negligence. A review of the Findings of Fact and Conclusions of Law provided by the trial court causes us to AFFIRM.

The Gayneses, a married couple, moved to Arizona in 1976. They subsequently decided to purchase a small paint manufacturer known as the Lupton Brothers Paint Manufacturing Company. Although the Gayneses owned some real property, their attempts to independently arrange for a loan from a lending institution to finance the purchase were unsuccessful.

In October of 1977 Gaynes contacted appellee Warren Freeman, an employee of appellee PCA Management Corporation, in an effort to obtain the necessary funds to purchase the paint manufacturer. With the assistance of PCA, Gaynes located four investors who agreed to form a corporation, the Lupton Paint Manufacturing Company, for the purpose of purchasing and operating the acquisition. A "management contract" to carry out this purpose was signed between PCA and Lupton Paint Manufacturing Company.

The arrangement called for Gaynes, who was designated as president and chief operating officer of the corporation to execute a note payable to the corporation secured by a first deed of trust on the couple's real property. The note provided the investors with security for their loans and was to become due in the event of nonpayment in March 1981. In addition, to the note, the investors received stock of the corporation as did PCA and Gaynes.

The corporation purchased the paint manufacturing facilities and was given a quitclaim deed conveying the interest, if any, of the seller in the real property upon which the manufacturing facility was located. The sellers were in possession but title to the realty was in the Small Business Administration. Although the parties were apparently aware of this fact prior to purchase, the deal was nevertheless consummated. Apparently, the lack of adequate production capacity was a major factor in the eventual collapse of the venture.

Each party blamed the other for the failure which resulted in litigation commenced in state court in July 1980. The Gayneses filed for relief under Chapter 13 in January 1981. In May 1981 the proceedings in state court were removed to the United States Bankruptcy Court for the District of Arizona.

The appellant Gaynes has challenged the propriety of the order entered on June 22, 1982, granting summary judgment disposing of their claim for breach of contract. This court is also asked to reverse the order entered on July 21, 1982, directing a verdict dismissing counts three and four of the Fourth Amended Complaint, which allege negligent failure to disclose a dual agency relationship and the negligent unauthorized practice of law, respectively.

### Breach of Contract Claim

Count two of the Fourth Amended Complaint alleged that PCA and Gaynes entered into a management agreement. The purported breach by the appellee, it was claimed, resulted in the Gayneses' loss of property securing the investors' loans.

The application of fundamental precepts of contract law reveals the absence of material terms in the document appellants contend embodies the management agreement. Most significant is the obvious omission of the appellant's signature.

The general rule for an enforceable contract to exist requires the signature of all parties to be bound. The only exceptions arise where subsequent conduct of the parties manifest the intent to adhere to a binding contract. *See Modular Systems, Inc. v. Nais Bitt,* 114 Ariz. 582, 562 P.2d 1080 (1977). In this case, neither the appellant's signature nor subsequent validating conduct exist to support enforcement of the document as a binding contract.

### Negligent Failure to Disclose a Dual Agency

At the conclusion of the hearing *in limine,* the trial court ruled that appellants did not substantiate their claim alleging negligent failure of PCA to disclose a conflict of interest arising from the simultaneous representation of Gaynes and the investors. The directed verdict is supported by three alternate grounds.

Appellants have directed the thrust of their appeal in asserting the existence of a dual agency while simply ignoring the remaining two grounds for dismissal. Notwithstanding the rule requiring this court to view the evidence in the light most favorable to the appellants, *Continental Ore. Co. v. Union Carbide & Carbon Corp.,* 370 U.S. 690, 696, 82 S.Ct. 1404, 1409, 8 L.Ed.2d 777 (1962), we must AFFIRM the lower court's decision to direct a verdict, disposing of the claim in view of the failure of proof regarding a breach of duty or causal relation between the alleged dual agency and resulting harm. A directed verdict is appropriate to dispose of a claim where there is a complete absence of pleading or proof on an issue material to the cause of action. 5A Moore's Federal Practice ¶ 50.02 (2d Ed. 1982).

The panel, therefore, views the lower court's disposition of count four of appellants' Fourth Amended Complaint as entirely proper.

*Unauthorized Practice of Law Claim*

It is not necessary for the panel to reexamine the lower court's application of Arizona law to the issue of whether appellees' conduct constituted the unauthorized practice of law. The trial court provided several alternate grounds for dismissal of appellants' claim, some of which were not challenged on appeal.

As was the case with respect to dismissal of count four, the trial court ruled that the appellants had failed to establish a causal relationship between the alleged tort and the resulting harm. Nor did the appellants persuade the lower court that their claim was not yet barred by the statute of limitations. The appellants having failed to challenge these conclusions in their appeal, the panel, in its discretion, declines to reverse the judgment of the court below.